Ordinarily, the Full Commission is the sole judge of the credibility of witnesses. Anderson v. Motor Co., 233 N.C. 372,64 S.E.2d 265 (1951). However, in cases where the Full Commission does not conduct a hearing and reviews a cold record, North Carolina has recognized the general rule that "the hearing officer is the best judge of the credibility of witnesses because he is a firsthand observer of witnesses whose testimony he must weigh and accept or reject." Pollard v. Krispy Waffle, 63 N.C. App. 354,357, 304 S.E.2d 762, 764 (1983), and Sanders v. Broyhill FurnitureIndustries, 124 N.C. App. 637, 478 S.E.2d 223 (1996), disc. reviewdenied, 346 N.C. 180, 486 S.E.2d 208 (1997). Recently, our appellate courts have begun to shape a set of requirements for the Commission in those cases where the Full Commission reverses the credibility determinations of a deputy commissioner who hears the case. In the instant case the Full Commission shall defer to the credibility findings of the Deputy Commissioner.
Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS, with minor modifications, the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement dated February 18, 1997, and at the hearing as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. That all parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. That all parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. That the plaintiff alleges to have sustained a compensable injury on August 8, 1994, and plaintiff had a compensable injury from April 13, 1992, upon which an Opinion and Award was filed on November 10, 1993.
5. That an employment relationship existed between the plaintiff and the employer-defendant during some or all of the time period of the previous paragraph.
6. The contested issues of the plaintiff are as follows:
 a. Whether the plaintiff is entitled to treatment by Sean R. Maloney?
 b. Whether the plaintiff is entitled to any temporary partial disability benefits, pursuant to N.C. Gen. Stat. § 97-30, and the Opinion and Award of November 10, 1993?
 c. Whether the plaintiff was injured by accident on August 8, 1994?
 d. Whether the alleged incident of August 8, 1994, was simply a continuation and aggravation of the compensable back injury of April 13, 1992, and, thus, compensable without having to establish a separate compensable incident?
 e. Is the plaintiff entitled to any temporary total disability benefits, pursuant to N.C. Gen. Stat. § 97-29, following the Opinion and Award of November 10, 1993?; and
 f. Are any sanctions appropriate for defendants' alleged failure to provide medical compensation and temporary partial disability benefits, pursuant to N.C. Gen. Stat. § 97-30, § 97-29, and the Opinion and Award of November 10, 1993?
7. The contested issues of the defendants are as follows:
 a. Whether employee-plaintiff suffered an injury by accident on August 8, 1994?
 b. Whether employee-plaintiff notified the employer-defendant of an injury by accident occurring on August 8, 1994, in accordance with N.C. Gen. Stat. § 97-22?
 c. Whether employee-plaintiff is entitled to a change in treating physicians? and
 d. Whether employee-plaintiff voluntarily submitted herself to the treatment of Dr. Johnson, who should remain her treating physician?
Based upon the competent evidence of record herein, the Full Commission adopts the findings of fact of the deputy commissioner, with minor modifications, and finds as follows:
 FINDINGS OF FACT
1. The Opinion and Award filed November 10, 1993 by Deputy Commissioner Morgan Chapman is incorporated herein by reference.
2. By Opinion and Award filed November 10, 1993, Deputy Commissioner Chapman found and concluded that plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant employer on April 13, 1992 which resulted in a low back injury and which rendered her totally disabled for a period of 28 weeks. Moreover, Deputy Commissioner Chapman awarded plaintiff workers' compensation indemnity benefits, including partial disability benefits beginning November 5, 1992 and continuing up to the date of the hearing, April 12, 1993, and continuing thereafter for so long as she remained partially disabled, subject to the 300 week statutory maximum period provided in N.C. Gen. Stat. § 97-30 and she awarded medical compensation benefits for all medical expenses incurred by plaintiff as a result of the injury by accident. That Opinion and Award also established plaintiff's average weekly wage as being $425.25 at the time of the injury by accident.
3. Following the April 12, 1993 hearing before Deputy Commissioner Chapman, plaintiff continued working for defendant employer at an average weekly wage less than she earned at the time of the injury by accident until August 2, 1996, except for a period of 8 weeks in 1996 during which she was out of work pursuant to a voluntary lay-off unrelated to her back injury. Defendants last paid to plaintiff indemnity workers' compensation benefits to October 30, 1994 at which time they ceased payment without Commission approval of a Form 24 Application To Stop Payment Of Benefits. On August 2, 1996 plaintiff took a medical leave of absence due to congestive heart failure and remained on that leave through February 21, 1997, the date of the hearing before the undersigned.
4. During the period from October 30, 1994 through December 31, 1994 plaintiff earned $2,206.05 or an average weekly wage of $245.17 ($2,206.05 divided by 9 weeks). During the year 1995, she earned $20, 296.66 or an average weekly wage of $389.25 ($20,296.66 divided by 52 1/7th weeks) and during the period from January 1, 1996 through August 2, 1996, less the 8 week period of voluntary lay-off, she earned $9,218.96 or an average weekly wage of $408.44 ($9,218.96 divided by 22 4/7th weeks).
5. Dr. VanBlaircom, who had been plaintiff's primary treating physician prior to February 19, 1994, referred plaintiff to Dr. Sean Maloney, a board certified physical medicine and rehabilitation medicine specialist, who in February 1994 assumed care of her chronic low back, left hip, and left leg pain which was she experiencing due to the injury by accident giving rise hereto. Dr. Maloney thereafter rendered conservative treatment, including medications, low back brace, trigger point injections and exercises.
6. On July 22, 1994 plaintiff went to the Asheville Rehabilitation Center at the request of defendants because Dr. Maloney, her treating physician, no longer had physical therapy available in his office for treatment of her low back injury. On that date she was examined and evaluated at the Asheville Rehabilitation Center by Dr. Johnson, a board certified occupational medicine specialist. He recommended she undergo a functional capacity evaluation, including the use of a B-200 machine, to evaluate her low back. Under these circumstances, Dr. Johnson did not become her treating physician, but rather, Dr. Maloney remained her treating physician. Plaintiff and defendants did not agree that Dr. Johnson would become her treating physician.
7. While using the B-200 machine as part of a functional capacity evaluation at the Asheville Rehabilitation Center on August 8, 1994, plaintiff experienced the onset of severe neck pain and upper back pain and she continued to experience low back and left leg pain. Because of the severity of her neck and upper back pain, she had to discontinue use of the B-200 machine after a few minutes. After resting for awhile, plaintiff completed the remainder of the functional capacity evaluation except for the B-200 machine portion thereof. Prior to that occasion, she had never experienced neck problems.
8. When plaintiff was later seen on August 8, 1994 for a scheduled appointment with VoHammie Payne, defendant employer's Employee Assistance Program Counselor, she related that she had injured her neck and experienced severe neck pain after being on the B-200 machine for a few minutes. On August 9, 1994 plaintiff advised Ken Matthews, her supervisor, how she had hurt her neck on August 8 and could not complete the B-200 machine evaluation.
9. After the functional capacity evaluation, plaintiff began a regimen of work hardening at the Asheville Rehabilitation Center and successfully completed it by September 19, 1994, having made significant improvement. During that time period, she worked for defendant employer two hours daily and then went to the work hardening program. On September 19, 1994 Dr. Johnson again examined and evaluated plaintiff and then released her to return to work with restrictions as noted in a functional capacity evaluation and he prescribed continuation of her home exercise program. He found her to be at maximum medical improvement with 0% permanent partial impairment of the low back.
10. Plaintiff then resumed working 8 hours daily for defendant employer at a light duty job and received assistance lifting things too heavy or that were otherwise too much for her. She continued to experience neck pain as well as low back pain, left hip, and left leg pain by reason of which her neck was drawn to her left, she limped and walked slowly, and had to take off from work on some occasions and on other occasions, she had to lie down in her supervisors' office. In addition, she took pain, muscle relaxant, and sleeping medications and continued to perform her exercises at home.
11. When seen by Dr. Maloney on January 13, 1995 plaintiff was complaining of more neck pain and back pain over the past 3 weeks and he thereafter ordered x-rays and an MRI which established that she had degenerative disk disease in the cervical spine and a disk protrusion at C5-C6. Dr. Maloney has continued treatment of plaintiff for her neck and low back pain with a regimen of medications, home exercises, and, whenever she has acute flare-ups of severe neck pain and acute flare-ups of low back and hip pain, he injects the trigger points. She experienced such flare-ups for which she received trigger point injections and was written out of work by him as follows:
 February 14, 1995 through February 17, 1995 for flare-up of neck and low back pain;
 March 22, 1995 through April 6, 1995 for flare-up of neck and shoulder pain;
 September 25, 1995 through a date undeterminable from the record for flare-up of neck, shoulder, low back and hip pain; and
 1/2 day on December 6, 1995 for flare-up of low back and hip pain.
Whenever trigger point injections are not successful in reducing plaintiff's symptomatology to the desired degree, it is necessary that she undergo a regimen of physical therapy. At defendant carrier's request, Dr. Maloney examined plaintiff on March 13, 1995 for a second opinion concerning a rating of permanency of her low back only. He rated her as having a 7.5% permanent partial impairment of the back (low back rating only).
12. As a result of the injury by accident of April 13, 1992, plaintiff sustained not only an injury resulting in chronic low back pain with resultant left hip and left leg pain but also cervical strain and aggravation of pre-existing cervical degenerative disc disease and aggravation of a C5-C6 disc protrusion on August 8, 1994 while using the B-200 machine for purposes of evaluation of her initially compensable low back injury. Her flare-ups of cervical pain after August 8, 1994 are also due to the injury by accident of April 13, 1992.
13. As a result of the injury by accident of April 13, 1992, plaintiff's period of diminished wage earning capacity continued after the November 10, 1993 Opinion and Award to August 2, 1996, except for an 8 week period of voluntary lay-off in 1996. Plaintiff's wage earning incapacity beginning August 2, 1996 and continuing thereafter has been due to a congestive heart failure condition.
14. The medical treatment rendered by Dr. Maloney beginning in February 1994 and continuing thereafter was reasonably medically necessary to give relief to plaintiff's muscle spasms and pain and said treatment will be so necessary in the future. Plaintiff has paid for a portion of the cost of physical therapy rendered after October 19, 1994 at the direction of Dr. Maloney.
15. Defendants ceased payment of partial disability compensation benefits on October 30, 1994 in violation of terms of the November 10, 1993 Opinion and Award, N.C. Gen. Stat. § 97-18.1
(a), and Workers' Compensation Rules 403 (2) and 404 (1).
16. Inasmuch as the evidence of record raised credibility issues with respect to not only the occurrence of the August 8, 1994 incident but also the causation of injury due thereto, defendants had reasonable grounds to defend this case at trial.
17. Since this appeal by defendant-insurer results in an order directing defendants to continue paying benefits to plaintiff, the plaintiff is entitled to have the costs of this appeal, including her attorney's fees, paid by the insurer as a part of the bill of costs.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Defendants' cessation of payment of partial disability benefits to plaintiff on October 30, 1994 and continuing thereafter to August 2, 1996 was, except for an 8 week period in 1996, in violation of the terms of the November 10, 1993 Opinion and Award, N.C. Gen. Stat. § 97-18.1 (a) and Workers' Compensation Rules 403 (2) and 404 (1). In view thereof, defendants shall pay to plaintiff an amount equal to 10% of the compensation payable to her from October 30, 1994 to August 2, 1996 which 10% amount shall be in addition to the compensation benefits she is otherwise entitled to for that period as set forth in Conclusion Of Law number 2 below. N.C. Gen. Stat. § 97-18 (e) and (g).
Moreover, pursuant to Workers' Compensation Rule 802, defendants are liable to plaintiff's attorney for reasonable attorney fees and costs for services necessitated by their improper cessation of Workers' Compensation benefits which constituted a violation of Workers' Compensation Rules 403 (2) and 404 (1). An attorney's fee of $500.00 is reasonable. This fee shall be in addition to any other attorney's fee awarded herein.
2. As a result of the injury by accident of April 13, 1992 plaintiff sustained not only an injury resulting in chronic low back, left hip, and left leg pain, but also cervical strain and aggravation of cervical degenerative disc disease and aggravation of a cervical disc protrusion on August 8, 1994. By reason of the injury by accident of April 13, 1992, plaintiff remained partially disabled on and after October 30, 1994 through August 2, 1996, except for the 8 week period in 1996 and she is entitled to partial disability benefits at the rate of 66 2/3% of the difference between her average weekly wage before the injury, $425.25, and the average weekly wage which she was able to earn thereafter. Accordingly, plaintiff is entitled to compensation benefits at the rates of: $120.06 per week for the period from October 30, 1994 through December 31, 1994 ($425.25 minus $245.17 equals a $180.08 difference which when multiplied by 66 2/3% yields a $120.06 compensation rate); $24.00 per week for the period of 52 1/7th weeks in 1995; and $11.21 for a 22 4/7th week period in 1996 ending August 2, 1996. N.C. Gen. Stat. § 97-30.
3. Defendants are responsible for medical compensation for the treatment rendered and to be rendered by Dr. Maloney and they are responsible for reimbursing plaintiff for the amount she paid for physical therapy which Dr. Maloney ordered after October 1994. N.C. Gen. Stat. § 97-2 (19) and N.C. Gen. Stat. § 97-25.
4. Defendants had reasonable grounds to defend this case at trial. Plaintiff's Motion for Assessment of Attorney Fees against defendants under N.C. Gen. Stat. § 97-88.1 is DENIED.
5. Since this appeal by defendant-insurer results in an order directing defendants to continue paying benefits to plaintiff, the plaintiff is entitled to have the costs of this appeal, including his attorney's fees, paid by the insurer as a part of the bill of costs. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff workers' compensation benefits as follows: $120.06 per week for the period from October 30, 1994 through December 31, 1994; $24.00 per week for the 52 1/7th week period in 1995; and $11.21 per week for a 22 4/7th week period in 1996 ending August 2, 1996. All of said compensation having accrued, it shall be paid in a lump sum without commutation.
2. In addition, defendants shall pay to plaintiff an amount equal to 10% of the workers' compensation benefits payable to her under paragraph numbered 1 of this Award. Said 10% amount shall be paid in a lump sum without commutation.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph one and two of this Award is approved for plaintiff's counsel and shall be deducted and paid directly to plaintiff's counsel.
4. In addition to any other attorney's fees herein, defendants shall pay plaintiff's attorney $500 as attorney's fees pursuant to Rule 802 as a sanction for violating workers' compensation rules.
5. An attorney's fee of $1,200.00 is awarded to plaintiff's counsel to be paid by defendants pursuant to N.C. Gen. Stat. § 97-88 as a part of the bill of costs. This attorney's fee is in addition to the attorney's fees awarded herein.
6. Defendant shall pay all medical expenses incurred or to be incurred in the future by the plaintiff as a result of her compensable injuries for so long as such examinations, evaluations and treatments tend to effect a cure, give relief, or lessen the plaintiff's period of disability, and shall reimburse plaintiff for the amount she paid for physical therapy subsequent to October 1994 when the bills for same have been submitted and approved through the procedures adopted by the Industrial Commission.
7. Defendants shall pay the costs.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, Jr. CHAIRMAN
S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER